IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Rhonda W. Sawyer,  )<br>Plaintiff,  )<br>)<br>)<br>vs.  )<br>)<br>Michael J. Astrue,  )<br>Commissioner of Social Security,  )<br>)<br>Defendant.  ) | Civil Action No. 8:10-1793-JDA<br><br>**ORDER** |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge; and the Honorable R. Bryan Harwell's August 24, 2010 Order of reference.  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and disabled widow's benefits ("DWB").  For the reasons set forth below, the decision of the Commissioner is affirmed.

## PROCEDURAL HISTORY

On April 26, 2007, Plaintiff protectively filed an application for DIB based on her own earnings record.[1] [R. 99–100.]  On July 24, 2008, Plaintiff filed an application for DWB

---

[1] Plaintiff also filed an application for supplemental security income ("SSI").  [R. 96–98.]  There is no further record with respect to Plaintiff's SSI claim; therefore, the Court addresses only Plaintiff's DIB and DWB claims.

based on the earnings record of her deceased husband.[2] [R. 111–13.] For both claims, Plaintiff's alleged onset of disability date was August 16, 2006.[3] [R. 177.] The DIB claim was denied initially on June 25, 2007 [R. 73–74, 78–81] and upon reconsideration on November 8, 2007 [R. 75–76, 82–83].[4] Plaintiff filed a request for hearing on January 7, 2008 [R. 85–86], and the DWB claim was escalated to hearing level as well [R. 10]. A hearing was held on July 31, 2009 before administrative law judge ("ALJ") Glen H. Watkins. [R. 20–53.]

On October 9, 2009, the ALJ issued his decision that Plaintiff was not disabled under §§ 202(e), 216(i) and 223(d) of the Social Security Act ("the Act"). [R. 7–19.] Following his review of the evidence, the ALJ found Plaintiff had the following severe impairments: hepatitis C, diabetes, fibromyalgia, sleep apnea, and depression. [R. 13, Finding 5.] The ALJ also noted non-severe impairments of hypertension, right shoulder pain, and hip pain, stating that the record showed Plaintiff's hypertension is controlled with medication and there was no specific medical diagnosis or treatment for right shoulder or hip pain. [R. 14.] The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part

---

[2] The standard for determining whether a claimant is disabled is the same for DIB and DWB claims. *See* 20 C.F.R. § 404.335 (citing 20 C.F.R. § 404.1505). In addition to determining whether Plaintiff was "disabled," other issues to be determined for purposes of eligibility for DWB are whether Plaintiff was the widow of a deceased wage earner, whether she attained the age of 50, whether she was unmarried or met one of the exceptions at 20 C.F.R. § 404.335(c)(3), and whether the disability began no later than seven years after the wage earner's death or seven years after Plaintiff was last entitled to survivor's benefits. *See id.* There is no dispute in this case that Plaintiff met these non-disability requirements for purposes of her DWB claim. [*See* R. 12–13, Finding 2.]

[3] Plaintiff initially alleged an onset date of April 1, 2002 [R. 102, 112] but amended her onset date to August 16, 2006 prior to the administrative hearing regarding her claims [R. 177].

[4] As the Commissioner pointed out, the documents pertaining to the initial and reconsideration denials of Plaintiff's DWB claim were not included in the administrative record before the Court. [Doc. 9 at 2 n.2.]

404, Subpart P, Appendix 1. [R. 14, Finding 6.] The ALJ also found Plaintiff retained the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c). [R. 15, Finding 7.] The ALJ concluded Plaintiff was able to lift up to twenty-five pounds frequently and fifty pounds occasionally; could sit, stand, or walk for up to six hours in an eight-hour workday; but was limited to occasional climbing of ramps or stairs and never climbing ladders, scaffolds, or ropes. [*Id.*] The ALJ also concluded Plaintiff could kneel, crouch, crawl, balance, or stoop on a frequent basis; could understand and carry out simple routine tasks; but must avoid concentrated exposure to hazards. [*Id.* at 15–16.] With these restrictions, the ALJ found Plaintiff was unable to perform any past relevant work [R. 18,  Finding 8], but jobs existed in significant numbers in the national economy Plaintiff could perform [R. 18, Finding 12].

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. [R. 6.]  On June 23, 2010, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff''s request for review of the hearing decision. [R. 1–5; 20 C.F.R. § 404.981.] Plaintiff  filed this action for judicial review on July 9, 2010. [Doc. 1.]

### THE PARTIES' POSITIONS

Plaintiff argues the Commissioner's residual functional capacity assessment is not supported by substantial evidence because it is inconsistent with the opinions of Plaintiff's two treating physicians. [Doc. 8 at 1.] Specifically, Plaintiff contends that Dr. Johnson's and  Dr. King's opinions, which concluded Plaintiff was more limited than the ALJ's residual functional capacity assessment reflected, are entitled to controlling weight. [*Id.* at 4–5, 7.]

The Commissioner argues the ALJ reasonably discounted Dr. Johnson's and Dr. King's opinions because they were not supported by objective medical evidence or the physicians' own treatment records. [Doc. 9 at 13.] The Commissioner contends that, while medical source opinions must be considered in assessing residual functional capacity, the final residual functional capacity determination is left to the ALJ, citing 20 C.F.R. §§ 404.1520, 404.1545–.1546. [*Id.* at 12.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76

F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).   Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir.

1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

6

and that there is good cause for the failure to incorporate such
evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day

8

of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a),; *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  20 C.F.R. § 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir.

9

1989) (stating that, when evaluating the effect of a number of impairments on a disability

claimant, "the [Commissioner] must consider the combined effect of a claimant's

impairments and not fragmentize them").  Accordingly, the ALJ must make specific and

well-articulated findings as to the effect of a combination of impairments when determining

whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must

adequately explain his or her evaluation of the combined effects of the impairments.").  If

the ALJ finds a combination of impairments to be severe, "the combined impact of the

impairments shall be considered throughout the disability determination process."  42

U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals

the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without

considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the

statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65

F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

claimant's residual functional capacity[6] with the physical and mental demands of the kind

---

[6]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. §
404.1545(e)

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

## E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").   Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130

12

(4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence.  *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d),.  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's

opinion. *See  Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(e).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig,* 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id*. (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman*, 829 F.2d at 518.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108

15

(4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements

16

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## DISCUSSION

Plaintiff argues the ALJ improperly weighed the opinions of Plaintiff's treating physicians, giving the physicians' opinions little weight even though there was evidence that fully supports the physicians' assessments.  The Court disagrees.

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the

physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178).  While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  Finally, the ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity.  20 C.F.R. § 1527(e).[8]

**Dr. Johnson's Opinion**

Dr. Josette Johnson opined the fatigue and elevated ammonia levels from Plaintiff's liver disease affect her cognitive functioning, including her ability to focus, concentrate, and remember.  [R. 321.]  Dr. Johnson noted chronic discomfort is draining and would probably preclude work that requires repetitive activities or work that requires holding positions for prolonged periods of time.  [*Id.*]  Dr. Johnson also opined no medication or combination of

---

[8] "[B]ecause the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant," the general rule is that a claimant's treating physicians' opinions are afforded great weight. *Johnson*, 434 F.3d at 654 (quoting *Mastro*, 270 F.3d at 178).  An ALJ, though, can give a treating physician's opinion less weight "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178.  Further, in undertaking review of the ALJ's treatment of a claimant's treating physicians' opinions, the reviewing court must remain mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

medications had been successful in completely improving Plaintiff's level of profound

fatigue and generalized achiness.  [*Id.*]  As a result, Dr. Johnson opined Plaintiff was "not

capable of being gainfully employed."  [*Id.*]

**Dr. King's Opinion**

Dr. Fitzwilliam King, who treated Plaintiff for over ten years [Doc. 8 at 6], limited

Plaintiff to ten pounds lifting, elevating her feet twenty-five degrees, and only occasionally

reaching, handling, or fingering with her hands.  [R. 323–28.]  In his report, Dr. King

commented that Plaintiff's diabetes is poorly controlled and that hepatic failure had

produced confusion.  [R. 328.]  As a result, Dr. King opined Plaintiff was "totally [and]

completely disabled from employment."  [*Id.*]

**The ALJ's Decision**

The ALJ, in considering the opinions of Dr. Johnson and Dr. King, provided the

following reasoning:

> As for the opinion evidence, Dr. King and Dr. Johnson who
> opine that [Plaintiff] is unable to meet the demands of any type
> of sustained work activity, I do not find their conclusions
> supported by the objective evidence of record.  Specifically, I
> do not find that their medical conclusions are supported by
> their treatment records.  Both Dr. King and Dr. Johnson have
> repeatedly recommended that claimant participate in regular
> physical activity.  The recommendation to increase physical
> activity is inconsistent with the finding that [Plaintiff] can not lift
> 10 pounds or stand and walk for more than 10 minutes.

[R. 17–18 (internal citation omitted).]  The ALJ noted Plaintiff's rheumatologist assessed

Plaintiff with fibromyalgia but encouraged Plaintiff to increase her activity level to improve

her functioning.  [R. 17.]  The ALJ further noted Dr. King attributed Plaintiff's increased

19

ammonia levels to poor diet; Plaintiff testified elevated ammonia levels affected her ability to think.  [R. 16.]

**Analysis**

Upon review of the evidence, the Court finds the ALJ's decision is supported by substantial evidence and the ALJ properly explained his decision by outlining how he considered and then discounted the treating physicians' opinions based on contradictory objective medical evidence and other inconsistent evidence, including Plaintiff's activities of daily living.

To begin, as to Plaintiff's physical activity, Dr. Johnson recommended exercise such as stretching and chair exercises [R. 206], although  Dr. Johnson noted that these exercises gave Plaintiff only temporary relief [R. 321].  Dr. King specifically encouraged Plaintiff to ride a bicycle and walk daily and discussed with Plaintiff that she needed to lose weight.  [R. 218.] Further, the record shows Plaintiff participated in Jazzercise three times a week, a fact noted with seeming approval by her physicians, including Drs. King and Johnson.  [R. 185, 195, 204, 205, 216.] Plaintiff indicated to her treating gastroenterologist that the exercise was helping with her fatigue and depression.  [R. 195.]

Moreover, as the ALJ noted, Plaintiff's impairments appeared to be responsive to conservative treatment.  The record establishes Plaintiff's hepatitis C was stable, with only mild enlargement of the liver. [R. 198–99.] Plaintiff's treating gastroenterologist expressed doubt that hepatitis C was the cause of Plaintiff's fatigue complaints and recommended her for sleep apnea treatment [R. 187, 195]; Plaintiff's sleep apnea symptoms improved with use of a CPAP machine, resulting in more restful sleep and better energy [R. 261].  The record also reveals Plaintiff's anti-anxiety medication helped her sleep [R. 204], and her

anti-depressant medication, in addition to helping her mentally, increased her energy levels "a little" [R. 33]. To the extent Plaintiff's glucose and ammonia levels were not fully controlled and caused fatigue, Dr. King attributed this to Plaintiff's diet and noncompliance with a recommended diet.[9] [R. 210, 211, 214, 337.] And, although Dr. King opined Plaintiff's physical impairments caused "poor concentration," on the same form, Dr. King noted Plaintiff exhibited "adequate" attention, concentration, and memory. [R. 239.] Further, examination notes indicate Plaintiff was alert, fully oriented, and maintained intact recent and remote memory, despite any fatigue. [R. 271, 331, 335.]

Additionally, Plaintiff testified she liked people, went to church, loved to work crossword puzzles, played a little on the computer, took care of her two dogs, loved to read but fell asleep when reading, drove, could shower and dress herself, cooked, shopped for her groceries, did the dishes and laundry, cleaned her house, and did her own yard work. [R. 38–39, 41–42.]

Finally, while Plaintiff argues fatigue, like pain, is not a symptom that can be established by objective medical evidence and cites to evidence of underlying conditions that could support the opinions of the treating physicians, the responsibility for weighing

---

[9] A finding that the claimant failed to comply with prescribed treatment may preclude a finding of disability. *Oliveira v. Astrue*, No. 10-537, 2011 WL 1832700, at *6 (D.S.C. Apr. 13, 2011); 20 C.F.R. § 404.1530 (stating that if the claimant does not follow his or her prescribed treatment without a good reason, the Commissioner will not find the claimant to be disabled); SSR 82–59, 1982 WL 31384, at *1 ("Individuals with a disabling impairment which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability . . . ." (emphasis omitted)); *see also Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989) (citation omitted) (finding a lack of financial resources may sometimes justify a claimant's failure to follow prescribed treatment, but in the case before the court, the claimant's failure to seek medical treatment or follow prescribed treatment was inconsistent with the claimant's complaints that the alleged impairment was disabling and was not the result of a lack of financial resources); *Gregory v. Comm'r of Soc. Sec. Admin.*, No. 09-413, 2010 WL 3046991 (D.S.C. July 12, 2010) ("On numerous occasions, Plaintiff's medical providers instructed her to quit smoking. . . . Plaintiff's failure to stop smoking or even attempt to stop smoking supports the ALJ's finding that Plaintiff's allegations about disabling limitations from her headaches and COPD were not fully credible.").

the evidence falls on the Commissioner or the ALJ, not on the reviewing court. *See Craig*, 76 F.3d at 589. Thus, so long as the decision is supported by substantial evidence, it is not within the province of this Court to determine the weight of the evidence, nor is it the Court's function to substitute its judgment for that of the Commissioner. *Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 520. Accordingly, based on its review of the record, the Court finds the ALJ properly considered all of the record evidence and articulated a reasonable basis for discounting the opinions of Drs. King and Johnson.[10]

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court orders that the Commissioner's decision be AFFIRMED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 31, 2011
Greenville, South Carolina

---

[10] Plaintiff also argues in her response brief that the Commissioner failed to carry his burden at Step 5 because "[t]o devalue two opinion statements from treating physicians with only a vague statement that the opinions are inconsistent with treatment notes which recommend increased physical activity is simply not adequate to carry the Commissioner's burden of proof." [Doc. 10 at 2; *see also* Doc. 8 at 7 (stating that the ALJ's decision to accord the treating physicians' opinions little weight was not harmless error because "[t]he ALJ basically agreed that if the doctors' opinions were correct, [Plaintiff] could not work."] The Court finds this argument essentially attacks the ALJ's residual functional capacity assessment, which is Step 4 of the sequential analysis and where the claimant bears the burden of proof, *see* 20 C.F.R. § 404.1520; *Grant*, 699 F.2d at 191. Based on the above analysis, the Court finds this argument against the ALJ's residual functional capacity assessment is without merit.